UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

SAMUEL ROOSEVELT JONES,

        Plaintiff,

v.

ERICA HUSS et al.,

        Defendants.

_____/

Case No. 2:19-cv-88

Honorable Gordon J. Quist

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Michigan. The events about which

he complains occurred at that facility. Plaintiff sues the following MBP employees: Warden Erica Huss, mailroom worker M. J. Dollar, Lieutenant D. Havenor, Grievance Coordinator Glenn Caron, Property Officer Unknown Royea, Corrrections Officer Unknown Ogle, Unknown Party #1 (Corrections Officer John/Jane Doe), and Prisoner Counselor K. Cody.

Plaintiff's complaint covers events beginning in December of 2018 and ending in April of 2019. His claims fall into two categories—claims relating to Plaintiff's personal property and claims relating to Plaintiff's mail.

With respect to Plaintiff's property, on December 28, 2018, because Plaintiff was placed on loss of privileges, his personal television was taken and he was provided a contraband removal slip. Then, on February 20, 2019, Plaintiff was placed in segregation. Several pieces of Plaintiff's personal property (headphones, tablet, USB cord, charger adapter, earbuds, religious and legal work, bowls, spork, tumbler, wavecap, toothpaste, deodorant, hairbrush, lotions, soaps, and hairgrease) were not packed up or accounted for.

For several days, Plaintiff sent kites to Defendant Royea regarding the missing property and the absence of a receipt for the property. Defendant Royea did not respond.

On February 26, 2019, Plaintiff filed a grievance regarding the property and the absence of a receipt. On March 6, Defendant Havenor reviewed the grievance with Plaintiff. She "coerced" him into signing off on the grievance by promising she would track down his property and then attach a receipt to the Step 1 grievance response. Two days later, Plaintiff received the Step 1 response, but there was no receipt and no information regarding the property. Plaintiff claims that Defendants Ogle and Unknown Party failed to provide a property receipt or track down Plaintiff's television.

2

On March 17, 2019, Plaintiff wrote a Step II appeal for his property grievance. Then, on April 10, 2019, Plaintiff sent a kite to Defendant Caron seeking a "loss, stolen, or damaged form." Defendant Caron did not respond.

With regard to his mail, Plaintiff raises two distinct claims. First, he complains that Defendant Dollar took too long to process his mail. He alleges that he received a letter from his grandmother dated January 4, 2019, during February of 2019. Then, on March 12, 2019, Plaintiff received two letters from his grandmother which she dated January 17, 2019, and February 26, 2019. Plaintiff filed a grievance against Defendant Dollar for delaying Plaintiff's incoming mail. The response to Plaintiff's grievance was a statement that all mail is processed within two days unless there is a mail rejection.

Plaintiff's second mail claim relates to the rejection of his mail. On March 18, 2019, Plaintiff mailed document requests to the United States Copyright Office and the United States Trademark Office. Those agencies sent Plaintiff business booklets. The booklets were rejected because they related to the operation of a business. (Notice of Package/Mail Rejection, ECF No. 1-1, PageID.10, 12.) Mail for the purpose of operating a business enterprise in the facility is considered a possible threat to the security, good order, or discipline of the facility. (*Id.*) Plaintiff does not appear to dispute that the items were business booklets; rather, he claims he planned to use the business booklets as part of his rehabilitation.

Plaintiff requested a hearing regarding the rejection. The hearing was conducted by Defendant Cody. Plaintiff claims the hearing was unfair. Plaintiff submitted an affidavit to Defendant Huss complaining of the rejection. (ECF No. 4.) She did not respond. Plaintiff alleges that he also filed a grievance regarding the matter. Plaintiff seeks damages and declaratory relief.

3

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

4

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.     Plaintiff's Personal Property

Plaintiff alleges that Defendants Havenor, Caron, Royea, Ogle, or John/Jane Doe deprived Plaintiff of his property.  His allegation implicates the Due Process Clause of the Fourteenth Amendment.  The elements of a procedural due process claim are:  (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The Court accepts as true Plaintiff's allegation regarding his ownership of the personal property as well as his allegation that he has been deprived of the property.  Moreover, Plaintiff's allegations support the inference that he was permanently deprived of property without adequate process.[1]  Thus, Plaintiff has adequately alleged the fundamental elements of a due process claim.  Nonetheless,  Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

---

[1] Whatever process Plaintiff may have received at the major misconduct hearing that resulted in his stay in segregation, and corresponding temporary confiscation of his personal property, would not serve as sufficient process to support the permanent deprivation of property of which Plaintiff complains.

5

Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985) (per curiam).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does

6

not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Plaintiff contends not only that Defendants took his property without due process of law, but also that they failed or refused to provide Plaintiff a receipt for the property as required by MDOC policy. Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

Plaintiff suggests that Defendants were negligent with respect to his property. "[P]rocedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). A claim of negligence is insufficient to support a § 1983 claim. *Daniels*, 474 U.S. at 333-36. Instead, to state a procedural due process claim, a plaintiff must allege a constitutionally arbitrary deprivation. *Id.*; *Howard*, 82 F.3d at 1350 ("'[A]rbitrary in the constitutional sense' for procedural due process purposes means conduct undertaken with something more than negligence.") (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)). To state a claim based on the deprivation of procedural due process, the "conduct must be grossly negligent, deliberately indifferent, or intentional." *Howard*, 82 F.3d at 1350. Plaintiff's allegations are not sufficient.

7

Moreover, to the extent Plaintiff intended his allegations of negligence or conversion to establish liability for state law torts, he seeks to invoke this Court's supplemental jurisdiction. The Court declines to exercise jurisdiction over Plaintiff's state-law claims.

In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction with respect to Plaintiff's state-law claims relating to his personal property. Accordingly, those claims will be dismissed without prejudice.

**IV.     Plaintiff's Mail**

Although there is no question that the First Amendment applies to a prisoner's receipt of incoming mail, the right is subject to limitation by legitimate penological interests. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). The Supreme Court has held that prison regulations (similar to those in Michigan) allowing a warden to reject any publication for good reason pursuant to specific criteria did not violate the First Amendment because the regulations were reasonably related to legitimate penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989).

Emphasizing the extreme deference accorded to prison officials, the Supreme Court stated:

> We deal here with incoming publications, material requested by an individual inmate but targeted to a general audience. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs, sexual orientation, or gang affiliations from that material, and cause disorder by acting accordingly. As the Deputy Solicitor General noted at oral argument: "The problem is not . . . in the individual reading the material in most cases. The problem is in the material getting into the prison." In the volatile prison environment, it is essential that prison officials be given broad discretion to prevent such disorder.

*Thornburgh*, 490 U.S. at 412-13 (citations omitted). The Court applied four factors relevant to the inquiry whether the restriction is reasonably related to legitimate penological interests: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers, (2) whether there are alternative means by which the inmate may exercise the right impinged, (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally, and (4) the existence or absence of ready alternatives to the regulation in question. *Turner v. Safley*, 482 U.S. 78, 88-91 (1987) (cited in *Thornburgh*, 490 U.S. at 414-18).

Under prison policy, a prisoner may not receive "mail for the purpose of operating a business enterprise while within the facility." MDOC Policy Directive 05.03.118, ¶ NN (20) (effective Mar. 1, 2018). The exclusion of the foregoing materials is based upon the Michigan Department of Corrections' conclusion that the items "may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner." *Id.*, ¶ N. This Court has applied the *Turner* factors to the "business

9

enterprise" mail rule many times and concluded that there is a valid rational connection between the regulation and a legitimate governmental interest. *See, e.g., Crowell v. Parsons*, No. 2:14-cv-44, 2014 WL 5159408 (W.D. Mich. Oct. 14, 2014); *Gulley v. Caruso*, No. 1:11-cv-1169, 2012 WL 32118 (W.D. Mich. Jan. 5, 2012); *Hudson v. Mich. Dep't of Corr.*, No. 2:08-cv-208, 2009 WL 56759 (W.D. Mich. Jan. 8, 2009); *Lewis v. Caruso*, No. 1:08-cv-28, 2008 WL 4283652 (W.D. Mich. Sept. 10, 2008). Indeed, the Sixth Circuit Court of Appeals found the *Turner* analysis in *Lewis* to be particularly instructive. *Jones v. Caruso*, 569 F.3d 258, 271 (6th Cir. 2009).

Plaintiff describes the rejected documents as "business booklets" and the information contained therein as "business information." (Affid., ECF No. 4, PageID.39-40.) Apparently, Plaintiff does not dispute that the mailing fits within the scope of the policy directive; instead, he claims that the business information would serve as a "means of his rehabilitation and not a threat to this facility." (*Id*., PageID.40.) Plaintiff's hope for a rehabilitative purpose for the rejected documents does not sever the valid rational connection between the regulation and the legitimate governmental interest it serves. Accordingly, Plaintiff's First Amendment mail rejection claim is properly dismissed.

With regard to Plaintiff's allegations of mail delay, he alleges only two, or possibly three, instances where his mail was possibly delayed. Plaintiff has not stated any facts that support the inference of actual delay, only the *possibility* of delay. He compares the dates his grandmother wrote on correspondence to him and the dates he actually received the correspondence; however, he alleges no facts to indicate when the mailroom received the letters. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 556). Plaintiff has alleged nothing more than a speculative possibility here.

In addition, even considering the dates written on the letters and the dates Plaintiff received them, he has alleged nothing more than relatively brief, isolated delays in mail receipt over the years of his incarceration. "[S]hort, non-content based delays in prison mail are not unreasonable and fail to state a constitutional question." *Cotton v. Schotten*, No. 95-4085, 1997 WL 299386, at *1 (6th Cir. June 4, 1997) (citing *Sizemore v. Williford*, 829 F. 2d 608, 610 (7th Cir. 1987)); *see also Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Therefore, Plaintiff mail-delay allegations fail to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g), Plaintiff's third. *See Jones v. Bauman et al.*, No. 2:18-cv-181 (W.D. Mich. Nov. 30, 2018); *Jones v. MDOC Court Order Processing Staff et al.*, No. 2:18-cv-13605 (E.D. Mich. Nov. 29, 2018).

A judgment consistent with this opinion will be entered.

Dated: July 2, 2019                               /s/ Gordon J. Quist
                                              GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE